GARCÍA, PLAINTIFF AND APPELLANT, v. GARCÍA, DEFENDANT AND APPELLEE.

## APPEAL from the District Court of San Juan, Section 1, in an Action to Establish a Servitude of Light and View.

### No. 1441.—Decided April 12, 1917.

SERVITUDE—LIGHT AND VIEW—PUBLIC THOROUGHFARE—PRIVATE WAY.—The term "public thoroughfare," employed in section 591 of the Civil Code in relation to section 589 of the same code, does not include a private way opened through a lot by its owner for the convenience of the persons living in an interior building belonging to the same owner.

ID. — ID. — TOLERANCE — OBSTRUCTIVE ACT — PRESCRIPTION. — Doors and windows opened in a wall which faces the property of another should be regarded as merely tolerated, except in case of an agreement therefor; and an easement of light and air can be acquired by prescription only by computing the prescription period from the time of the commission of some obstructive act acquiesced in by the owner of the adjoining property and tending to deprive the latter of the right to build thereon.

ID.—JOISTS—ROOFS—CEILINGS.—The horizontal beams of wood or other material placed on the wall-plates of a building to serve as the main connection and support of the different floors which separate the stories, are called joists (carreras or vigas). The roof is the exterior part exposed to the direct action of the elements, and the interior parts covering the rooms are the ceilings; therefore there are several ceilings in a building of several stories and hence as many sets of joists as ceilings.

ID.—WINDOWS WITH DIRECT VIEW—OWNER OF ADJOINING PROPERTY.—If the law provides that windows with direct views shall not be opened unless there is a distance of two meters between the wall in which they are built and the adjoining property of another, and that in a wall not a party wall adjoining another's tenement openings of thirty centimeters square may be made at the height of the ceiling joists, it impliedly recognizes also the right of the owner of the adjoining property to demand the fulfilment of such provisions in the courts. And if jurisprudence has established that the simple fact of opening doors and windows in contravention of the rules of law creates no right in favor of the owner of the building in which they are opened, and that the lack of opposition on the part of the owner of the adjoining property should be considered as an act of mere tolerance, it is natural that the said owner has a right of action whenever he may see fit to exercise it.

The facts are stated in the opinion.

*Messrs. Ramón Falcón* and *Adrián Agosto* for the appellant.

Mr. *Manuel Benítez Flores* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is a suit about a servitude of light and view. The plaintiff alleged that he was the owner of a lot situated in the town of Río Piedras measuring 17.26 meters in front by 66.45 meters in depth, on which he had erected a two-story house and a tenement house; that the lot was completely enclosed; that on the left-hand entering there was an alley for the use of a store on the ground floor of the house and of the persons living in the tenement house, and that abutting upon the said alley was a house recently acquired by the defendant, who was constructing a masonry building and opening doors and windows in the wall without maintaining the distances prescribed by law. The plaintiff prayed the court to enter final judgment ordering the defendant to close up the doors and windows opened in the said wall—that is, the wall of the defendant's house—which is erected flush with the dividing line between the lots of the plaintiff and defendant.

The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The court overruled his demurrer and the defendant then answered the complaint alleging that the house belonging to him had been in the same place for more than thirty years, with the same openings and windows which it now has, "the only change made by the defendant being the substitution of concrete walls for the planking, leaving the same studs and framing of lumber which the house contained when acquired by the defendant"; that between the plaintiff's and the defendant's houses there is an alley which is a public street forming part of the town of Río Piedras and owned by the said municipality; that the plaintiff's house was built later than that of the defendant, and that the action brought by the plaintiff is barred by limitation because the defendant's house has been standing in the same place for more than thirty years,

with the same openings and windows which it now has. The defendant prayed that the complaint be dismissed with costs, expenses and attorney fees against the plaintiff.

The issue being thus joined, the case went to trial and the voluminous evidence introduced by the parties was examined. The court made the following findings of fact:

"That the plaintiff and the defendant are the owners of two adjoining properties on Comercio Street, Río Piedras, P. R., both fronting on the highway.

"That on the defendant's lot there is a house which was constructed more than 28 years ago with the same boundaries and area it now has, the changes made by the defendant consisting in the substitution of concrete walls for planking, leaving the same studs and framing and the same roof which it formerly had. According to the plaintiff's evidence, this house had only six windows before the changes were made and now has eleven; and according to the defendant, the windows are the same now as before.

"That the plaintiff has a two-story house built of masonry or cement on his lot, with windows and doors in the side facing the defendant's property which adjoins that of the plaintiff, there being between the house of the latter and the wall of García Salgado's house an alley more than three feet wide belonging to the plaintiff which is open to the use of the public generally and which gives access to the house of García Fernández and a tenement house built by him at the rear of the same property, in which more than three families live."

Based on these facts and on a view of the premises which, in the opinion of the court, showed that the windows opened in the property of the defendant in no way molested the persons living on the plaintiff's property, the complaint was dismissed with costs against the plaintiff, who thereupon took the present appeal.

From an examination of the opinion on which the district court bases its judgment it is deduced that the principal reason and perhaps the only reason it had for dismissing the complaint was the application of section 591 of the Revised Civil Code, which reads as follows:

"The provisions of section 589 of this article are not applicable to buildings separated by a public thoroughfare."

Section 589, to which section 591 refers, reads:

"Windows with direct views, or balconies or any similar openings projecting over the tenement of a neighbor shall not be made if there is not a distance of two meters between the wall in which they are built and the said property."

## The reasoning of the trial court follows:

"We have said already that, as the evidence shows, the alley between the houses of the parties was opened to the public generally by García Fernández, its owner. Can the alley between the two properties be considered a public thoroughfare? In his pleadings the plaintiff himself says that the said alley is open for the use of a store and of the tenants of a tenement house built at the rear. This store is a mercantile business owned by the plaintiff. In commenting on article 584 of the Spanish Civil Code, the same as section 591 of the Revised Civil Code, Manresa says that everything relating to the exception in this section must harmonize with the provisions of the municipal ordinances. According to an ordinance approved by the municipality of Río Piedras in June, 1908, an owner of land who erects buildings must pave the street, construct gutters and deliver the street to the municipality, etc. As the court had occasion to observe during its ocular inspection, the plaintiff complied with the requirements of this ordinance by paving the street, putting in gutters, and dedicating the street to public use. Commenting on article 584 of the Spanish Civil Code, *supra,* Scaevola, the distinguished commentator, says:

" 'The language of article 584 is so clear that but little effort is required to understand its meaning and scope. A public thoroughfare belongs to all and to no one in particular. Nobody will believe that each citizen has in it a private domicile, which is what the law governing the restricted right of view seeks to guarantee. What is done on a public thoroughfare may be seen and inspected by any one from whatever point he may choose. For the purposes and comprehension of the said provision, that phrase should conserve all possible elasticity in its meaning, always starting from the well-known intention of the legislator in excepting the public thoroughfare from lands or tenements over which there is a right to unlimited view. And in this sense we may apply the term "public thoroughfare" to roads, streets, crossings and alleys, as well as to canals, rivers, streams, harbors and bridges constructed by the State, the province or the municipality; to river-banks, beaches, fountains and public waters, walk-

ways, public works for general use, and, in a word, to all such properties (in the legal sense of the word) as (*regardless of who may be the owner*) are used in common by all the citizens and without distinction and which are popularly known as "public property." In fact, the properties enumerated as examples are considered by articles 339 and 344 of our Civil Code as of public use and ownership.'

"As is seen, the wise commentator considers that all those places used by the residents of a town in common are public thoroughfares, regardless of the person who may own or have a property right in such places. The plaintiff's alley falls well within the definition of the Spanish jurisconsult. Having been opened to the public in general and used in common by the residents, it should be considered a public thoroughfare for the purposes of section 591 of the Revised Civil Code.

"Moreover, Sanitary Regulation No. 2, in regard to tenement houses and rules governing the same, found in Administrative Bulletin No. 44, promulgated by the Governor of Porto Rico pursuant to an Act of July 1, 1912, provides as follows:

RULES GOVERNING TENEMENT HOUSES.

" 'Section 1.—By "tenement houses" shall be understood any building or part of a building intended as a dwelling-place for three or more families who occupy separate apartments, using in common one or several parts of said building and certain of the conveniences of the same, and who cook separately in the same house.

" 'Section 3.—Every building intended for a tenement house, which may be constructed from now on, must face on a street or a public way, etc.

" 'Section 10.—When it is desired to convert into a tenement house any building at present intended for other purposes its construction or alteration shall be subject to the rules established for newly constructed tenement houses.'

"Hence, if the plaintiff built such tenement house and opened the alley to public transit, or in the words of his complaint, for the use of a store on the ground floor and of the persons living in the said tenement house, he complied with the municipal ordinances and with the requirements of the sanitary regulations on this point, and having complied with these requisites, it is not necessary to inquire further into the question at issue to reach the conclusion that the said alley is and should be considered a public thoroughfare for the purposes of section 591, because the plaintiff himself has admitted and recognized this by building a tenement house."

After carefully considering the facts and the law we are unable to agree with the distinguished trial court that the said alley is a public thoroughfare.

Notwithstanding the fact that it has been shown that the said alley is used by persons having business relations with the mercantile establishment located on the ground floor of the plaintiff's house and by the persons living in the tenement house and their friends, and that in fact at present no one is prevented from using it, yet the fact is that the alley continues to be the private property of the plaintiff, as it has never been converted into a public thoroughfare of the kind the legislators had in mind in establishing the exception contained in section 591.

"A public thoroughfare belongs to all and to no one in particular," says the commentator quoted by the district court, and in this action the court itself admits in its findings of fact that the alley is the private property of the plaintiff. And although the said commentator includes alleys in his enumeration of the different public thoroughfares, it is obvious that he had in mind alleys of "public use," such as the narrow side-streets of the old Spanish cities, as demonstrated in this very city of San Juan, Porto Rico, and not alleys opened by the owners of enclosed lots for the convenience of people who live in tenement houses built by the said owners, or alleys of "private use," which may be changed or closed at any time at the will of the owner. The scope of Scaevola's opinion is limited by its last clause, which reads: "In fact, the properties enumerated as examples are considered by articles 339 and 344 of our Civil Code as of public use and ownership." The said articles are similar to sections 327 and 328 of the Revised Civil Code, which provide that things of public domain are those intended for public use, as roads, canals, rivers, streams, and the like, and that property of public use in Porto Rico and the towns thereof comprises the insular and local roads, the squares, streets, fountains and

public waters, walks, and public works for general use, paid for by the said towns or from the Treasury of Porto Rico.

The very ordinance of the municipality of Río Piedras which is cited by the trial court may be invoked in support of the conclusion that the plaintiff's alley is not a public thoroughfare. Section 3 of said ordinance reads as follows:

"Section 3.—Not more than one house and its accessories shall be built on any one lot. This house must face on a street or public thoroughfare regardless of the distance at which it is located within the lot. By accessories of the house shall be understood, for the purposes of this section, the servants' quarters, kitchen, lavatory, carriage-house, stable, or storehouse. When the lot is of sufficient size to admit other independent buildings, they may be constructed after a favorable report by the sanitary inspector and the municipal engineer, who shall take into account the requirements of public embellishment, health and safety, and that there is easy access from the public street or highway to the buildings."

The plaintiff acquired his property in the year 1909. The ordinance went into effect on June 1, 1908. The tenement house was built by the plaintiff after he acquired the property and, therefore, while the ordinance was in force. The plaintiff's lot measures more than 17 meters in front by more than 66 meters in depth, and the two-story house erected thereon facing on the street is only 10 meters in front by 18 in depth. There remained, therefore, a large unoccupied area, on a part of which the tenement house was built.

This being the case, should it not be presumed that the local law was complied with and that the object of the alley opened up by the plaintiff on his own land was simply to provide the easy access required by the ordinance *from the street or public highway* to the interior building?

As regards Sanitary Regulation No. 2 concerning tenement houses, which is relied on by the district court, whatever may be its scope we will only say for the purposes of this action that it went into effect on July 13, 1912, and that although the records do not show the exact date on which the

plaintiff built the tenement house, everything would seem to indicate that it was built prior to July 13, 1912. This is an old suit. The complaint is dated November 29, 1913. It is not shown that the regulation in question was discussed by the parties in connection with this case while it was being tried.

Therefore, as this case does not fall within the exception contained in section 591 of the Revised Civil Code, we must consider and dispose of it in the light of the provisions of section 589 of the said code.

The said section is closely related to sections 587 and 588. They are all included in Article Fifth of Chapter II, Title VII, of the Revised Civil Code. The title treats of servitudes in general and Article Fifth of servitudes of light and view. Sections 587, 588 and 589 are substantially the same as articles 580, 581 and 582 of the old Civil Code in force in Spain and which was in force in Porto Rico until 1902.

Section 587 refers to party walls and provides that no part-owner may, without the consent of the other, make in the party wall any window or opening whatever. Section 588 treats of walls which are not party walls adjoining another's tenement, and provides that the owners of such walls may make in them windows or openings to admit light, at the height of the ceiling joists or immediately under the ceiling, of the dimensions of thirty centimeters square, and in any case, with an iron grate embedded in the wall and a wire screen. It provides further that notwithstanding the authorization granted to the owner of the wall, the owner of the tenement or property adjoining the wall in which the openings are made may close them if he acquires the part-ownership of the wall and if there be no agreement to the contrary, and may also obstruct them by building on his land or raising a wall adjacent to that having such opening or window. And, finally, section 589 treats of windows and balconies and provides that only when there is a distance of two meters between the wall and the adjoining property may

windows with direct views or balconies or any similar openings be made, and that in case of side or oblique walls the distance shall be sixty centimeters instead of two meters. The horizontal beams of wood or other material placed on the wall-plates of a building to serve as the main connection and support of the different floors which separate the stories are called joists (*carreras* or *vigas*). See 10 Scaevola, 448. The roof is the exterior part exposed to the direct action of the elements, and the interior parts covering the rooms are the ceilings; therefore there are several ceilings in a building of several stories and hence as many sets of joists as ceilings. See *Choco* v. *Santamaría*, 21 Philippine Juris. 135, 141.

The wall of the defendant's house is not a party wall; therefore section 587 is not applicable. The said wall is built on the precise line where the defendant's lot adjoins the lot of the plaintiff. This is not disputed. Pursuant to section 588, the defendant has the right to make windows or openings at the height of the ceiling joists to admit light, subject, of course, to the right of the plaintiff to obstruct such openings or windows by building on his land or raising a wall adjacent to that of the defendant. But neither is this the case. It is not a question here of openings or windows thirty centimeters square made at the height of the ceiling joists. The defendant has gone further. He has made openings for doors and windows with direct views in a contiguous wall which he would have a right to make, pursuant to said section 589, only if the wall of his house were built at a distance of two meters from the line dividing his and the plaintiff's lots.

The defendant himself admits this, but, as we have seen, alleges that special circumstances control his case; namely, prescription and the fact that his house fronts on a public thoroughfare.

Having expressed our opinion as to whether the doors and windows of the defendant's house face on a public thoroughfare, it remains only to consider whether the defendant has

acquired any right by prescription, or whether for any reason the plaintiff is estopped from exercising the clear right granted him by law.

As to whether the defendant's house was simply repaired, as he maintains, or rebuilt, as contended by the plaintiff, we will accept the conclusion most favorable to the defendant and consider the present house as if it were the same old frame house which the defendant purchased some years ago.

Does the fact of opening doors and windows in a wall not a party wall adjoining another property give an easement of light and view over the said property by virtue of the lapse of time?

As far back as the year 1877 the Supreme Court of Spain said that "according to Law XV, Title XXXI, *Partida* III, use gives no right to maintain lateral openings or windows in one's wall to the detriment of an adjoining owner who, being the owner from the ground to the sky, may freely build on his adjacent property, or raise existing buildings, unless the raising had been prohibited on account of his shutting out the light (*contrallado el alzamiento por que no se allele la lumbre*), and the time prescribed by the same law had expired after this obstructive act." Judgment of June 13, 1877; 37 *Jur. Civ.* 188.

The same tribunal held in 1882 that "openings made in the wall of a property adjoining the soil and sky of another are merely tolerated in the absence of an express agreement or concession, and the right cannot be acquired by prescription except by computing the time from the commission of some obstructive act in regard to which when a person avails himself of such lights he seeks to establish a negative easement so that the owner of the property affected cannot build on contiguous property or, consequently, injure him. On the other hand, it is a fact known to all that no windows other than those called ordinance windows are authorized, and then only while the adjoining owner does not consider it con-

venient to build and obstruct them, as he has a right to do.''
Judgment of May 13, 1882; 49 *Jur. Civ.* 172.

We have cited two judgments rendered prior to the enact-
ment of the Civil Code in order to show that the principles
formerly governing this matter were substantially the same
as those laid down in the code. And while it is true that it
was the Civil Code which fixed a distance of two meters in the
case of direct views, it is also true that no right ever existed
to have such views by means of doors and windows opened in
a wall adjoining the property of a different owner. And this
is the case of the defendant. Neither under the old law nor
under the Civil Code could the defendant or his predecessor in
title lawfully open the doors and windows which now exist in
the said wall, as they did. Their action was contrary to law
and the defendant cannot plead the lapse of time for the ac-
quisition of his alleged right to continue keeping open the said
doors and windows against the will of the owner of the ad-
joining property, unless he had shown the commission of the
''obstructive act'' referred to in the jurisprudence cited and
the running of the prescription period after the commission
of such act.

In that understanding the defendant introduced at the
trial the testimony of Enrique Acosta, Eloy García Plá and
Ramón H. Patrón who testified, in synopsis, that when the
house now owned by the defendant was built some twenty-
eight or thirty years before, Father Padilla was the owner
of the plaintiff's lot, and he expressed to them his objection
to having the said doors and windows opened and complained
to the municipal council of Río Piedras, informing himself
regarding the rules applicable to the case. One of these wit-
nesses suggested that there had been a lawsuit, but later tes-
tified that he was not sure of this.

Even conceding the truth of this testimony, it would not
show, in our opinion, the obstructive act contemplated by the
jurisprudence cited. Father Padilla might have been annoyed,
might have made inquiries, and might have expressed his

intention to resist, but he might have considered afterwards the trouble and expense of an action at law, might have been informed that mere tolerance on his part of the said doors and windows could not vest a right in the owner of the wall in which they were opened, and might have desisted from his intention to bring any action at that time. There is no evidence that the predecessor of the defendant contested the right of the plaintiff's predecessor and defeated him in any way.

Finally, let us see whether the plaintiff is estopped from bringing his action in this case.

A right without a remedy is inconceivable, says Manresa in treating of actions which may arise under the provisions of the Civil Code in matters of easements. See Vol. II, p. 632, of his Commentaries. And really if the law provides that windows with direct views can be opened only at a distance of two meters from the boundary with the adjoining property and that in a wall adjoining another's property the owner can make openings of only thirty centimeters square at the height of the ceiling joists, it impliedly recognizes also the right of the owner of the adjoining property to demand the fulfilment of such provisions in the courts.

How long does that right last? In his comments on article 582 of the old Civil Code, which is the same as section 589 of the Revised Civil Code, in Volume X, page 493, Scaevola cites as a precedent Book IV, Title IV, Law 8 of the *Fuero Viejo de Castilla,* which, in so far as pertinent, reads: "*Si un ome a una casa, e quier facer finiestras en la pared de la casa, e a cabo de aquellas casas ay otras casas, e corrales tras las casas, a delante (puede) facer tamaña finiestra, que non saque la cabeza por ella. E si ouier fecha de ante gran finiestra, e veyendolo el otro estovier año e dia probandol' ainsi como es fuero, puede la finiestra tener fasta quel otro alce sua pared.*"

If that law were in full force it would have to be admitted that only after the expiration of the year and a day referred to therein the owner of the property adjoining the wall in

which the window was opened had the right to close it by raising his own wall, and that, therefore, his right of action to reduce the windows to their proper size existed for only a year and a day.

But the law of the *Fuero Viejo de Castilla,* which should more properly be called *Fuero de los Fijos-dalgo,* as said by Antequera in the third edition, page 170, of his History of Spanish Legislation, was repealed by Law XIV, Title XXXI, Part III of the *Siete Partidas.* In its judgment of October 13, 1866, 14 *Jur. Civ.,* 453, the Supreme Court of Spain, in referring to this matter, held as follows: "And whereas, in so far as refers to the latter in connection with windows opened in the party wall, the provisions of Law 8, Title IV, Book IV, of the *Fuero Viejo de Castilla,* which is alleged to be violated, is also repealed by other subsequent laws which permit easements to be created only by contract, by prescription or by will."

The judgment of the Supreme Court, *supra,* affirmed a judgment of the court of Coruña adjudging that the owner of a certain house should remove the dividing wall and in rebuilding the said wall reduce the openings for light to the size prescribed by law. And the ground relied on by the owner of the wall in pleading the law of the *Fuero Viejo de Castilla* was that the wall with its eight windows had been in existence for five years without any such claim having been made, "for which reason the windows should be allowed to remain unless the owners of the adjoining house should raise it, in which event they would disappear and the defendant could not even object."

Can the existence of the ancient interdicts and the fact that the plaintiff's predecessor did not resort to the *new construction* in order to enforce his rights within the time prescribed by the law influence the decision in this case? By no means. As Manresa says, interdicts "are summary proceedings whose purpose it is to decide temporarily the right to present possession, or the *fact* of possession, without prej-

udice to the right of the interested parties, and also to suspend or avoid an injurious or harmful act"; and as maintained by Gómez de la Serna, cited by Manresa, "the judgments rendered in these proceedings, although final, are of a special nature, because although they decide the question either for or against the complainant and it cannot therefore be raised again in the same aspect, they do not bar an action of wider scope regarding the same subject-matter, attended by more solemn formalities and testimony not of a temporary and provisional nature as the interdict, but stable, permanent and perpetual in regard to the issues in the action." See VI Manresa, Code of Civ. Proc. 107.

That the cause of action to enforce the rights originating from the provisions of the Civil Code repeatedly cited herein and of the analogous laws in force prior thereto, is unlimited, is a natural and logical consequence of the doctrine which has been laid down again and again by the Supreme Court of Spain to the effect that the openings in a wall fronting upon the soil and sky of a different owner should be regarded as merely tolerated, unless there be an agreement to the contrary, and can be acquired by prescription only by computing the period of prescription from the time of the commission of some obstructive act tending to deprive the owner of the affected property of the right to build thereon. See also the judgments of the Supreme Court of Spain cited herein; the judgments of the same court of May 10, 1884, 55 Civ. Jur. 188; November 12, 1889, 66 Civ. Jur. 412; May 31, 1890, 67 Civ. Jur. 714; February 8, 1899, 86 Civ. Jur. 213; May 27, 1899, 87 Civ. Jur. 303; March 3, 1905, 100 Civ. Jur. 448; February 9, 1907, 107 Civ. Jur. 291; judgment of the Supreme Court of the Philippine Islands of December 29, 1911, 21 Phil. Jur. 135, and that of the Supreme Court of Porto Rico in the case of *Díaz* v. *Guerra,* 18 P. R. R. 790.

If mere tolerance does not create any right, it is not important to consider the element of time. The person who has voluntarily tolerated the act may at any time change his

attitude and claim and obtain the full acknowledgment of his rights.

The judgment appealed from should be reversed and another rendered sustaining the complaint and adjudging consequently that within ten days the defendant close up the doors and windows in the wall of his building adjoining the property of the plaintiff, described in the complaint, without prejudice to his right to continue to admit light in the manner and with the restrictions prescribed by section 588 of the Revised Civil Code, and without special imposition of costs.

*Reversed and substituted.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice Hutchison dissented.